**Dated: June 6, 2025**

**The following is ORDERED:**





Janice D. Loyd
U.S. Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

In re:                                    )
                                          )
    Jennifer Colbert,                     )          Case No. 24-10199-JDL
                                          )          Ch. 7
                        Debtor.           )

**OPINION AND ORDER  VACATING ORDERS DENYING EXEMPTION**

**I. Introduction**

The Debtor's bankruptcy lawyer, Alexander Hilton, II ("Hilton"), as does any lawyer, owed a duty of candor to this Court and fidelity to his client.  These duties are not only two of the most important attributes of an ethical lawyer, but are absolute requirements for the practice of law.  In this case, Hilton failed at both.  On June 3, 2025, this matter came before the Court for an evidentiary hearing pursuant to the Court's *Order for Hearing Court's Sua Sponte Consideration to Vacate Agreed Orders Denying Exemption* entered on April 21, 2025 [Doc. 87]; the Chapter 7 *Trustee's Response to Court's Sua Sponte Consideration to Vacate Agreed Orders Denying Exemptions* [Doc. 89] and the *Debtor's Response to Court's Sua Sponte Consideration to Vacate Agreed Orders Denying*

*Exemptions* [Doc. 95].[1]  As discussed below, the Court concludes that in forging and filing the Debtor's bankruptcy petition, schedules, amended schedules and statement of financial affairs ("SOFA") and agreeing to orders denying an exemption on the Debtor's home without her authorization or knowledge, Hilton acted in bad faith and violated a myriad of Bankruptcy Code provisions, Federal and Local Rules of Bankruptcy Procedure and ethical rules imposed by the Oklahoma Rules of Professional Conduct.  The result is that this Court must *sua sponte* vacate orders agreed to and signed by Hilton which denied Debtor an exemption on her home.

## II. Jurisdiction

The United States District Court for the Western District of Oklahoma has jurisdiction by virtue of 28 U.S.C. § 1334(b).  This Bankruptcy Court derives to its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§157(a) and (b)(1) and the District Court's General Order of Reference contained in Local Rule LCvR 81.4.  Determinations as to exemptions of property of the bankruptcy estate are core proceedings over which this Court has been conferred with the jurisdictional authority to enter final orders.11 U.S.C. § 157(b)(2)(B).

## III. Background

On August 15, 2024, the Chapter 7 Trustee ("Trustee") filed an adversary proceeding against the Debtor seeking a judgment determining that a $200,000 cashier's check which the Debtor had in her possession on the date she filed bankruptcy and which she subsequently used to purchase her Nichols Hills condominium was property of the

---

[1] No response to the Court's order was filed by the Creditors who had obtained an agreed order denying the Debtor's claim of exemption in her home.

bankruptcy estate.[2]  The Trustee sought the Court to quiet title to the condominium in the bankruptcy estate.

The Debtor, *pro se*, filed an answer to the Trustee's complaint alleging, inter alia, that her attorney, Hilton, had recommended "to make sure I had purchased a home by March 7, 2024, after Mr. Hilton filed the bankruptcy so it would be homesteaded and exempt from creditors."  Debtor also alleged that Hilton "filled out, fraudulently signed and filed three bankruptcy schedules without my knowledge the schedules even existed and without my consent." [Adv. Case No. 24-1053, Doc. 11].

The Trustee thereafter filed *Trustee's Motion for Summary Judgment* [Adv. 24-1053, Doc. 12] based in part, and insofar as it pertains to the $200,000 cashier's check and the condominium, the Court having previously entered an *Agreed Order on Trustee's Objection to Debtor's Claimed Exemptions* that the Nichols Hills condominium with a value of $195,000 was not exempt [Doc. 34].  The Debtor filed a *Response to Trustee's Motion for Summary Judgment* [Adv. Case No 24-1053, Doc. 13] in which she alleged:

> Debtor was never aware Mr. Hilton had filled out and signed debtor's name, then filed all the schedules.... Mr. Hilton left debtor completely in the dark concerning everything he was unethically doing, including never showing debtor any of the filings he had filled out and signed.
> ****
> I told Mr. Hilton the truth concerning everything, including the cash I had in the bank and the bank account number.
> ****

---

[2] *John D. Mashburn, U. S. Bankruptcy Trustee of the Bankruptcy Estate of Jennifer Colbert, Plaintiff v. Jennifer Colbert*, Adversary Case No 24-1053.

The Trustee's adversary also sought the determination that $25,299.68 which Debtor had in bank accounts on the Petition Date, which were not disclosed in her schedules, were also non-exempt and property of the bankruptcy estate.

3

> Mr. Hilton informed me, with witnesses, that he could file bankruptcy, that I could purchase a home after he filed bankruptcy, telling my daughter in a text [that] I needed to have a home purchased by March 7th and numerous messages to me that have all previously been filed.
>
> Mr. Hilton informed me that since I planned on purchasing a home with the remainder funds of the sale of my property that it would be homesteaded and protected by the Federal Homestead Act.
>
> ****
>
> Debtor never had any knowledge of any of the schedules Alex Hilton filed.

Given the fact that motions for summary judgment are decided on the undisputed material facts, it is not the Court's practice to conduct evidentiary hearings. However, given the unique facts of this case in which (1) the Trustee and the Creditors were asserting that the Debtor had falsified her schedules and the Debtor was claiming that she was never aware of or signed any of the pleadings in the bankruptcy case and (2) the Court was aware that the United States Trustee ("UST") had filed an adversary proceeding against Hilton asserting that he had admitted filing the petition, schedules, SOFA and amended schedules and amended SOFA without the Debtor's knowledge or signature, the Court determined that an evidentiary hearing was required before ruling on the *Trustee's Motion for Summary Judgment*.

On April 15, 2025, the Court conducted an evidentiary hearing on the *Trustee's Motion for Summary Judgment* [Adv. Case No., 24-1053, Doc. 12]. At the hearing the Debtor testified, among other things, (1) that she never signed the original petition, schedules or SOFA; (2) that she never signed any of the amended schedules filed on February 14, May 1, May 6 and May 10, 2024; and (3) that she never knew of or approved

4

the *Agreed Order on Trustee's Objection to Debtor's Claimed Exemptions* [Doc. 34] or the *Agreed Order Granting Creditors' Objection to Claim of Exemption in Homestead* [Doc. 36] which Hilton purportedly approved on her behalf.  In fact, the agreed order on the Creditors' objection to exemption stated that "[t]he the debtor has agreed to the entry of this Order as evidenced by the signature of her counsel."  It is now clear that statement was untrue. Both of the agreed orders denied Debtor an exemption in the Nichols Hills condominium now occupied as her residence.

At the April 15th hearing the Court also took judicial notice of prior and pending adversary proceedings brought by the UST.  The UST had originally brought an adversary proceeding against the Debtor under 11 U.S.C.  § 727(a)(2) and (4) seeking to deny her discharge based on her alleged removing or concealing property of the bankruptcy estate and having knowingly and fraudulently giving false testimony at her Meeting of Creditors that her schedules and initial SOFA were true, correct and complete.[3]  After conducting an investigation, the UST dismissed the adversary proceeding against the Debtor and filed one against the Debtor's attorney, Alex Hilton.[4]  The UST's complaint asserted that an investigation by its office had determined that most, if not all, of the documents in the Debtor's case were filed without her knowledge or approval, including the fact that she had never signed most of the pleadings which, in part, formed the basis of the UST's adversary proceeding against the Debtor and the Chapter 7 Trustee's and the Creditors' objections to exemption.  The UST's complaint stated that in its investigation attorney Hilton admitted

---

[3] *United States Trustee, Plaintiff v. Jennifer Colbert*, Adversary Case No. 24-1045.

[4] *United States Trustee, Plaintiff v. Alexander Elias Hilton II and Alexander Elias Hilton II, Attorney at Law, LLC, Defendants,* Adversary Case No. 25-1020.

5

that the Debtor did not review or sign most of the documents which he filed on her behalf. As a sanction, the UST sought to permanently bar Hilton from practicing in this bankruptcy court and to refund to the Debtor all fees he had been paid.  Without having filed an answer in the UST's adversary proceeding, on April 3, 2025, Hilton gave public notice that he was retiring from the practice of law and had closed his office.[5]

Based upon the evidence presented and judicial notice taken at the April 15th hearing, the Court found that there existed probable cause to believe that Hilton's conduct may not only have constituted fraud upon his client/Debtor but also a fraud upon the Court sufficient for it to *sua sponte* conduct an independent investigation in order to determine whether it has been the victim of fraud and, if so, consider whether to vacate the two agreed orders denying the Debtor's claim of exemption in her present residence. Accordingly, on April 21, 2025, the Court entered its *Order for Hearing Court's Sua Sponte Consideration to Vacate Agreed Orders Denying Exemption* [Doc. 87] giving notice to all interested parties of the Court's intent to consider the *sua sponte* vacation of the orders, establishing a deadline by which all interested parties could file responses and setting the matter for an evidentiary hearing on June 3, 2025.  The Trustee and the Debtor filed responses to the Court's order for hearing. [Docs. 89 and 95, respectively].

Based upon the evidence produced at the evidentiary hearing of June 3, 2025, including matters of which the Court could properly take judicial notice, and pursuant to Fed. R. Bankr. P. 9014 and 7052, the Court makes the following Findings of Fact and

---

[5] Hilton was licensed to practice law in the State of California. He was practicing law in Oklahoma by reciprocity. On April 4, 2025, Hilton gave notice to the California State Bar Court that "charges were pending against" him and  that he was resigning from the State Bar of California and relinquishing all right to practice law in the State of California. [Adv. Case No. 24-01020, Doc. 9-1].

Conclusions of Law which form the basis of the Court's decision.[6]

## IV. Facts

1. On August 16, 2023, the Debtor sold her home located at 16801 Kierland Court in Edmond, Oklahoma for $595,000 and deposited net proceeds from the sale in the amount of $418,662.32 into her account no. ******6392 at Bank of Oklahoma ("BOK").

2. From August 16, 2023, to the filing of Debtor's bankruptcy petition, the Debtor withdrew substantial funds from the BOK account and deposited an additional $4,730.71 representing the proceeds from the sale of her piano.

3. On January 26, 2024, the Debtor withdrew $200,000.00 in funds from account no. *****6392 to purchase a cashier's check in the amount of $200,000.00, leaving a balance in the account of $25,299.68.

4. On January 29, 2024, the Debtor filed a petition for relief under Chapter 13 of the U.S. Bankruptcy Code (the "Petition Date"). The petition was a "bare-bones" bankruptcy which only included the petition itself and the verification of creditor matrix. No schedules, SOFA, employee income records, summary of assets and liabilities, means test f orm or any other information was filed at that time. As testified to by the Debtor, and admitted by Hilton, he placed the Debtor's electronic signature on the petition knowing that she did not sign it.

5. The $200,000.00 cashier's check was not negotiated and was in the Debtor's possession as of the Petition Date. Thus, as of the Petition Date the Debtor had in her bank account $25,299.68 and the negotiable instrument of $200,000.00, for total cash assets of $225,299.68.

6. On February 12, 2024, the Debtor, through Hilton, filed the initial Schedules, initial SOFA, Chapter 13 Statement of Current Monthly Income, Summary of Assets and Liabilities and Declaration bearing the Debtor's electronic signature. Schedule A/B ¶ 17 checked the box "No" as to whether the Debtor had any deposits of money, including checking, savings or other financial accounts. In fact, the Debtor had more than $25,000 in her BOK account on the Petition Date. Schedule C (Exemptions) listed the Nichols Hills condominium as having a value of $195,000 as her residence, although on the Petition Date and on the date of the filing of the schedules she did not yet own it. While Schedule A/B ¶ 16 listed $8,500 in cash, neither the cash nor the $200,000 cashier's check the Debtor was holding were claimed as exempt in Schedule C.

The schedules and the SOFA did not reveal the Debtor's former residence on Kierland

---

[6] At the conclusion of the April 15, 2025, hearing the Court found that there were disputed issues of material fact regarding the exemption of the Debtor's condominium precluding disposition of the Trustee's adversary by way of summary judgment.

Court in Edmond, Oklahoma which had been sold in August 2023 for $595,000, nor property in Garvin County, Oklahoma which had been sold in 2022 (through Jennifer Colbert Investments, LLC) for $500,000. As testified to by the Debtor and admitted by Hilton, the Debtor never saw or signed any of the documents bearing her electronic signature filed on February 12, 2024.

7. On February 14, 2024, the Debtor, through Hilton, filed her Amended Schedules A/B, I, and J, Summary of Assets and Liabilities, and Declaration. The Amended Schedule A/B ¶ 17 again answered "No" to the question as to whether the Debtor had any deposits of money in checking, savings or other financial accounts.

8. The $200,000.00 cashier's check (or its proceeds) was tendered by the Debtor to an individual seller and negotiated on or about February 22, 2024, in consideration of the Debtor's purchase and closing of the sale of the following described real property for the purchase price of $182,500, to wit: Unit 173, GRAND POINTE CONDOMINIUMS, an Unit Ownership Estate, Nichols Hills, Oklahoma County, Oklahoma, also known as 6500 N. Grand Boulevard, Unit 173, Oklahoma City, OK 73116.

9. On March 12, 2024, the case was voluntarily converted from a Chapter 13 to one under Chapter 7.

10. On April 10, 2024, the Debtor testified under oath at the Meeting of Creditors, among other things, that (1) she signed the petition, initial schedules and initial SOFA filed in the case, (2) she read and reviewed all the information contained in her initial schedules and initial SOFA before they were filed, (3) her initial schedules and SOFA were true, correct, and complete, and (4) the initial schedules and SOFA listed all her assets. Attorney Hilton was present at the Meeting of Creditors and in documents filed with the Court has admitted that the Debtor's testimony was incorrect, but he did not correct her erroneous testimony at the Meeting of Creditors or at any time thereafter.

11. On May 1, 2024, the Debtor, through Hilton, filed her Second Amended Schedules A/B, C, D, E/F, I and J and Amended SOFA. The Summary of Assets and Liabilities indicated that the Debtor had $6,100 in cash, a checking account balance as of March 12, 2024 of $8,710.24, and that the Debtor had opened a checking account at BOK on February 22, 2024 which had a balance of $14,515. Schedule C, Exemptions, claimed as exempt the Nichols Hills condominium and $2,500 in wages. The schedules also reflected that Jennifer Colbert Properties, LLC had one property transaction in 2016.

12. On May 6, 2024, the Debtor, through Hilton, filed her Third Amended A/B Schedules which in ¶ 16 indicated under "cash" a "cashier's check held for purchasing a property at Grand Boulevard property listed above" (the Nichols Hills condominium). The Third Amended Schedules A/B ¶ 17 indicated that the Debtor had no deposits of money, checking, savings or other financial accounts. The Third Amended SOFA ¶ 2 for the first time listed three places in which the Debtor had lived in the three years preceding the bankruptcy: 4001 NE 138th Ter., Edmond, Oklahoma (2023-February 2024); 16801

Kierland Ct., Edmond, Oklahoma (2016-2023) and 6500 N. Grand Blvd., Apt. 173, Oklahoma City, Oklahoma (2/22/24-present).

The Third Amended SOFA ¶ 5 also listed as her sources of income the "sale of personal residence" in 2023 for $417,119 and "sale of 33250 N. County Road in Davis, Oklahoma" for $477,716 in 2022. The SOFA also listed two lawsuits involving the Debtor were pending within one year prior to bankruptcy.

13. On May 10, 2024, Debtor, through Hilton, filed another Amended Schedule C which did not list as exempt the Nichols Hills condominium or the $200,000 cashier's check with which she used to purchase it. [Doc. 32]. Hilton has admitted that the Debtor did not review or sign the Amended Schedule C.

14. On May 7, 2025, the UST filed a motion to compromise controversy of its adversary proceeding against Hilton [Doc. 90]. As part of the motion, Hilton signed a *Stipulation of Fact and of Settlement* ("Stipulation") [Doc. 90-1] in which he admitted that "he filed each of the following documents using Ms. Colbert's electronic signature, knowing she had never reviewed the final drafts of, or physically signed any of them:"

- Voluntary Petition [Doc. 1] filed January 29, 2024;
- Initial Schedules, Declarations, and SOFA filed February 12, 2024 [Doc. 4];
- Amended Schedules A/B, I, and J filed February 14, 2024 [Doc. 9];
- Pay Advice Cover Sheet filed February 14, 2024 [Doc. 10];
- Notice of Conversion to Chapter 7 filed March 12, 2024 [Doc. 13];
- Statement of Intent filed March 14, 2024 [Doc. 14];
- Chapter 7 Means Test Form 1221 filed March 14, 2024 [Doc. 15];
- Amended Schedules A/B, C, D, E/F, I, and J filed May 1, 2024 [Doc. 27];
- Amended Schedules A/B and SOFA filed May 6, 2024 [Doc. 29]; and
- Amended Schedule C filed May 10, 2024 [Doc. 32].

(Collectively, the "Unsigned Documents")**.**

The Stipulation also contained Hilton's admission that the Debtor never signed or returned a written engagement agreement to Hilton. Under the Stipulation, Hilton agreed to "immediately cease practicing law in Oklahoma," pay $2,500 to the Court Clerk of the Western District of Oklahoma and to return to the Debtor all sums paid by her to Hilton.

15. The Debtor testified that she never saw, signed or authorized the filing of any of the Unsigned Documents.

16. The Debtor testified that she had never seen, signed or authorized Hilton's approval of the *Agreed Order on Trustee's Objection to Debtor's Claimed Exemptions* [Doc. 34] or the *Agreed Order Granting Creditors' Objection to Claim of Exemption in Homestead* [Doc. 36] relating to either the Nichols Hills condominium or the $200,000 cashier's check used

to purchase it.

## V. Discussion

In May 2024, both the Trustee and the Creditors (who had sued the Debtor in state court for defamation) filed objections to the Debtor's claim of exemption in the Nichols Hills condominium [Docs. 28 and 30, respectively].  Both the Trustee's and the Creditors' objections to exemptions had two basis.  First, both the Trustee and the Creditors argued that the Debtor's schedules, amended schedules and SOFA either omitted critical information or misrepresented the same, and that a debtor cannot amend and claim as exempt property if the same was intentionally concealed or that the amendment was filed in bad faith or was prejudicial to third parties.  *In re Calder*, 973 F.2d 862(10th Cir. 1992); *In re Grogan,* 300 B.R. 804, (Bankr. D. Utah 2003).  Second, while recognizing that under Oklahoma law the proceeds of the sale of one homestead may be exempt, the Trustee and the Creditors argued that not only did the Debtor conceal her possession of the $200,000 cashier's check but that she lacked the requisite intent to reinvest the funds in a new homestead within a reasonable time after the sale of her prior residence.

Inexplicably, Hilton did not interpose a defense to the objections to exemption, including the obvious one that the $200,000 cashier's check constituted proceeds from the sale of her former homestead which were used to purchase her new residence.  The Court says "inexplicable" because for more than 100 years it has been black-letter law in Oklahoma, as in most states, that proceeds of exempt property retain their exempt status if such proceeds were used or intended to be used to purchase a new exempt homestead within a reasonable time. *Field v. Goat*, 1918 OK 315, 173 P. 363; *Harrell v. Bank of*

10

*Wilson,* 1968 OK 120, 445 P.2d 266; *In re Lewis,* 216 B.R. 644, 648 (Bankr. N.D. Okla.1998). Hilton's conduct is further egregious because the Debtor testified that from the beginning of her dealings with Hilton she had made clear that the two major benefits she sought by bankruptcy were the protection of her homestead exemption and the stay of the state court defamation suit in which she was the defendant.

Even the timing of Hilton's conduct in scheduling the exemptions is problematic. He filed the initial Schedule C on February 12, 2024, and the Amended Schedule C on May 6, 2024, both of which had listed the Nichols Hills condominium as exempt. Yet, within less than a week after the Trustee and the Creditors filed their objections to the claim of exemption on May 3 and May 9, respectively, on May 10, 2024, Hilton filed another Amended Schedule C which deleted the Nichols Hills condominium as exempt. Within days after filing of the latest Amended Schedule C which deleted the Nichols Hills condominium, Hilton approved, without the Debtor's knowledge or consent, the orders denying the Nichols Hills condominium as exempt.[7]

Neither of the agreed orders contained any specific findings of fact or stating the legal grounds for the denial of the exemption. Both agreed orders merely provided that no objection had been filed and that the exemption should be denied. The agreed order on the Creditors' objection also stated that "[t]he debtor has agreed to the entry of this Order

---

[7] Due to Hilton's machinations in filing the Amended Schedule C on May 10, 2024 [Doc. 32], it would appear from the face of the docket sheet that the Debtor might have no existing claim to an exemption on the $200,000 cashier's check or the Nichols Hills condominium. In the *Trustee's Response to Court's Sua Sponte Consideration to Vacate Agreed Orders Denying Exemptions* he argues that "even if such orders (agreeing to the denial of the claim of exemption) were vacated there is no currently filed claim for exemption in the Real Property or in the funds used to purchase such real property." [Doc. 89. Pg. 2]. That issue is not before the Court. The only issue before the Court is whether the agreed orders should be vacated due to Hilton's fraud on the Court.

11

as evidenced by the signature of her counsel." [Doc. 36]. That statement was untrue. The evidence is uncontroverted that the Debtor did not agree to the entry of either order, and, in fact, never knew of the same until long after they were entered.

Rule 1008 of the Fed. R. Bankr. P. mandates that all petitions, lists, schedules, statements and amendments thereto must be verified or contain a sworn declaration as provided in 28 U.S.C. § 1746. Fed. R. Bankr. P. 1008's signature requirement is a means of not only authorizing the filing of those documents, but of verifying, under penalty of perjury, that they have reviewed the information contained therein and that it is true and correct to the best of their knowledge, information and belief. Local Bankruptcy Rule 1001-1(J.) states:

> **J. Signature, Verification, and Retention of Documents and Pleadings.** The electronic filing of a Document electronically signed by a client of the Registered Participant, including but not limited to the petition, statement of financial affairs and schedules of assets and liabilities, shall be deemed a certification by the Registered Participant that he or she has the Document bearing the person's original handwritten signature in his or her physical possession. The Registered Participant must produce the original signed Document on request of the Court or a trustee. Electronically filed pleadings and Documents requiring original signatures, other than the signature of the Registered Participant, must be maintained in paper form by the Registered Participant until two (2) years after the later of the running of the appeal time or closing of the bankruptcy case.

Related to Rule 1008 is Fed. R. Bankr. P. 5005(a)(3)(D), which provides that "[a] paper filed electronically is a written paper for purposed of these rules,.... A case filed electronically is identical to a paper case filed in person. *In re Wenk*, 296 B.R. 719, 724 (Bankr. E.D. Va. 2002). "In filing a petition electronically, the practitioner represents to the court that he or she has secured an originally executed petition physically signed by debtor

12

*prior* to electronically filing the case." *Id.* at 725 (emphasis in original). It is undisputed that the Debtor did not sign any "wet" signatures on the bankruptcy pleadings. Rule 5005 and Local Bankruptcy Rule 1001-1(J.) have been violated by Hilton's intentional misrepresentation that he had secured original, physical documents prior to electronically filing the case.

Fed. R. Bankr. P. 9011(f) reinforces the Fed. R. Bankr. P. 1008 signature requirements and provides: "[w]hen these rules require copies of a signed or verified document, if the original is signed or verified, a copy that conforms to the original suffices." Rule 9011(b), the bedrock of the Rule, is that the filing of any pleading or other paper by an attorney is a *representation to the Court* that any factual contentions have evidentiary support or are likely to have an evidentiary support after a reasonable opportunity for further investigation or discovery. (emphasis added). Hilton violated Rule 9011 in numerous ways.

Bankruptcy Code § 526(a)(2) prohibits a debt relief agency, which includes an attorney, "from mak[ing] a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading." Hilton violated § 526(a)(2) in almost every manner possible, including, but not limited to, (1) filing the Debtor's Initial Schedule A/B erroneously listing her residence as the Nichols Hills Condo instead of the rental house, (2) by filing the Debtor's initial Schedule A/B omitting her possession of the $200,000 cashier's check and (3) by signing the Creditors' agreed order denying exemption which stated that Debtor "had consented" to the entry of the order when she had not consented, and in fact, knew nothing about.

13

Hilton is no bankruptcy novice. The docket sheets in this Court reflect that Hilton has been counsel of record in more than 1700 cases. Hilton is an experienced bankruptcy attorney and must have known that forging a debtor's signature, and presenting it to the Court as if it were a debtor's authentic signature, is never objectively reasonable, under any circumstances. His actions went above negligence, and instead amounted to intentional misconduct and bad faith.

The problem that confronts the Court is twofold. The first arises from the fact that Hilton, an officer of the court, engaged in the practice of filing incomplete and inaccurate schedules and other documents with the Court. The second, and most serious problem with regard to its affect on the Court, and the entire bankruptcy process, is the fact that the pleadings Hilton did file with the Court falsely and fraudulently represented on their face that they had been reviewed by the client and verified as truthful under penalty of perjury. As one bankruptcy court has stated: "When the petition [is] received, the court [is] presented with a document which stated on its face that debtor had signed it, under penalty of perjury, when it was not true. This amounts to fraud." *In re Wenk*, 296 B.R. 719, 725 (Bankr. E.D. Va. 2002).

The Bankruptcy Court in Colorado recently summarized the law regarding an attorney filing pleadings purportedly, but not actually, signed by the client in *In re Mennona*, 2023 WL 149957, at *16 (Bankr. D. Colo. 2023):

> Bankruptcy courts uniformly have determined that "electronically filing a document bearing an electronic signature that was not actually or validly signed constitutes a forgery amounting to a Rule 9011 violation." *In re Stomberg*, 487 B.R. 775, 808 (Bankr. S.D. Tex. 2013) (quotation omitted); *see also Briggs v. Labarage (In re Phillips),* 317 B.R. 518, 524 (8th Cir.

14

BAP 2004), *aff'd in part* 433 F.3d 1068 (8th Cir. 2006) (finding that without the original signature on the debtor's petition "the factual contentions have no evidentiary support and thus the petition violates Rule 9011(b)(3)."); *In re Burnett*, 2022 WL 802586, at *8 (Bankr. D.S.C. Mar. 16, 2022) ("The filing of a document with the debtor's electronic signature is a certification by an attorney that he has appropriately obtained the signature."); *In re T.H.,* 529 B.R. 112, 139-141 (Bankr. E.D. Va. 2015) (finding that attorney violated Fed. R. Bankr. P. 9011 by filing a petition without the debtor's signature and stating that "[a]ffixing the electronic signature of an individual who did not in fact sign or authorize the signing indeed amounts to forgery"); *In re Bradley,* 495 B.R. at 780 ("electronically filing a document that purports to have the debtor's signature, but which was not, in fact, signed by the debtor is no different than physically forging the debtor's signature on a paper document."). *U.S. Tr. v. Jones (In re Alvarado)*, 363 B.R. 484, 491 (Bankr. E.D. Va. 2007) (finding Rule 9011 was violated where attorney filed a second case without debtor's signature); *In re Ludwick*, 185 B.R. 238, 244-47 (Bankr. W.D. Mich. 1995) (suspending attorney for forging client signatures in violation of Fed. R. Bankr. P. 9011).

In short, "there are no circumstances that would ever justify an attorney filing a petition, any Schedule, or a SOFA without first obtaining the debtor's signature...." *In re Bradley,* 495 B.R. 747, 780 (Bankr. D. Tex. 2013).

Hilton's "forgeries" of the bankruptcy filings (the Unsigned Documents), including signing the agreed order which falsely represented that the Debtor had consented to relinquishing whatever exemption rights she may have in her present residence was not only a fraud upon the Debtor but also a fraud upon this Court. "[F]raud on the court encompasses only that type of fraud which attempts to 'defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.'" *In re Old Carco LLC,* 423 B.R. 40, 52 (Bankr. S.D. N.Y. 2010); *United States v. Buck,* 281

F.3d 1336, 1342 (10th Cir. 2002) ("Fraud on the court ... is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents...."). *Bulloch v. United States,* 763 F.2d 1115, 1121 (10th Cir. 1985) ("Fraud on the court is fraud that is directed to the judicial machinery itself... [and it occurs] where the impartial functions of the Court have been directly corrupted.").  As one court has said, "[i]t is hard to imagine a more willful act than perpetrating a fraud on the court by submitting knowingly falsified documents." *Stafford v. Derose,* 2015 WL 1499833, at *4 (M.D. Pa. 2015).

This Court has inherent authority, and indeed a duty, to consider whether there has been a fraud on the court, and if so, to order an appropriate remedy, whenever such fraud comes to the Court's attention. *In re M.T.G., Inc.*, 366 B.R. 730, 754 (Bankr. E.D. Mich. 2007), *aff'd,* 400 B.R. 558 (E.D. Mich. 2009).  What is the appropriate remedy for the Court to apply given what it deems to be the fraud perpetrated upon it?  All courts have the inherent equitable power to vacate a judgment that has been obtained by the commission of fraud upon the court. *Universal Oil Products Co. v. Root Refining Co.*, 328 U.S. 575, 580, 66 S.Ct. 1176 (1946); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 2132 (1991) ("the inherent power ... allows a federal court to vacate its own judgment upon proof that a fraud has been practiced upon the court").  "The court may assert this power *sua sponte*." *United States v. Buck*, 281 F.3d 1336, 1341-42 (10th Cir. 2002).  Furthermore, the provision of Fed. R. Civ. P. 60(d), commonly known as the "savings clause" states: "This rule does not limit the power of a court to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding... or (3) set aside a judgment for fraud on the court."  Lastly, the bankruptcy court has the authority under § 105(a) to "issue any

order, process, or judgment that is necessary or appropriate to carry out the provisions of this title..." and that "[n]o provision of this title ... shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination, necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." This statutory power under § 105(a) includes the power to ensure the integrity of proceedings in bankruptcy cases and the "authority of a court to redress a fraud on the court." *In re Thomas*, 337 B.R. 879, 888 (Bankr. S.D. Texas 2006).

Based on the evidence presented and the above law, the Court finds Debtor's counsel perpetrated a fraud on the Court and that the same is a sufficient basis to *sua sponte* vacate both of the agreed orders in favor of the Trustee and the Creditors denying the Debtor's claim of exemption in and to the Nichols Hills condominium and/or the $200,000 cashier's check which she used to purchase it.  Accordingly,

**IT IS ORDERED** that the *Agreed Order on Trustee's Objection to Debtor's Claimed Exemptions* [Doc. 34] and the *Agreed Order Granting Creditors' Objection to Claim of Exemption in Homestead* [Doc. 36] are hereby **Vacated, Set Aside and Held for Naught**.

**IT IS FURTHER ORDERED** that **within 14 days from the date of the entry of this Order the Debtor** shall file a Response to the *Trustee's Objection to Debtor's Claimed Exemptions* [Doc. 28] and to the *Creditors' Objection to Claim of Exemption in Homestead with Brief in Support* [Doc. 30].

# # #

17